IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RANDALL WINSLOW, On His Own Behalf and For Those Similarly Situated** <br> Plaintiff, | : <br> : <br> : <br> : | **CIVIL ACTION** |
| v. | : <br> : | **NO. 08 - 1890** |
| **THE BOROUGH OF MALVERN PENNSYLVANIA, CHIEF OF POLICE MICHAEL MCMAHON, POLICE OFFICER, LLOYD DOUGLAS, THE TOWNSHIP OF WILLISTOWN, CHIEF OF POLICE JOHN NARCISE, OFFICER STEPHEN J. JONES, Individually and in Their Official Capacities As Police Officers in the Borough of Malvern and the Township of Willistown** <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : | |

**DuBOIS, J.**  December 7, 2009

**M E M O R A N D U M**

**I. INTRODUCTION**

This is a civil rights case arising under 42 U.S.C. § 1983 in which the plaintiff, Randall Winslow, claims that the defendants both violated his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments and committed torts under Pennsylvania law. Presently before the Court are two motions to dismiss. The first was filed by the Borough of Malvern and two of its police officers, Chief Michael McMahon and Sgt. Lloyd Douglas; the second was filed by the Township of Willistown and two of its officers, Chief John Narcise and Officer Stephen J. Jones. For the reasons set forth below the Court dismisses Winslow's claims against all of the defendants except Douglas. As to Douglas the Court dismisses all of Winslow's claims except for the claims of (1) battery, (2) violation of the Fourth Amendment protection against use of unreasonable force

and (3) violation of the Fourth Amendment's protection against unreasonable search.

## II. BACKGROUND[1]

Winslow was inside his employer's house at 12 Callery Way Malvern, in Williston Township, at approximately 12:10 A.M. on April 16, 2006 when he heard someone knocking loudly at the door and breaking the door window lights. (Am. Compl. ¶ 17). Fearing further destruction of the property, Winslow answered the door to find Sergeant Lloyd Douglas of the Borough of Malvern police department. (Am. Compl. ¶ 18). Douglas placed his foot in the threshold of the house and began asking Winslow questions. (Am. Compl. ¶¶ 18, 20). Winslow responded by asking Douglas if he had a warrant. (Am. Compl. ¶ 21). Douglas refused to respond, instead asking Winslow if he had been driving a Range Rover, if he had been drinking, and how long he had been inside the house. (Am. Compl. ¶¶ 22, 25). Douglas then asked Winslow to open the garage door, which Winslow did "for fear of property damages or the charge of resisting arrest, or not cooperating with police." (Am. Compl. ¶ 26).

Winslow also avers that he was not given his Miranda warnings at "any proper time", that when his Miranda warnings were finally delivered, Douglas would not let Winslow use his glasses to see what he was signing, that the police tightly handcuffed and injured him when he was arrested, and that the police permitted a hospital employee to take his blood. (Am. Compl. ¶¶ 28, 31, 32).

After his April 16, 2006 arrest on suspicion of drunk driving, Winslow pled guilty to driving under the influence of alcohol and disorderly conduct.[2] Winslow later attempted to invalidate this plea under Pennsylvania's Post-Conviction Relief Act, but his petition was denied by the Court of

---

[1] The facts are taken from the Amended Complaint, or are matters of public record, and presented in the light most favorable to the plaintiff.

[2] Pennsylvania v. Winslow, No. CP-15-CR-0002374-2006, Docket entry of 9/12/2006 (Ct. Comm. Pleas, Chester Cty) ( Document No. 26, Exhibit B, filed June 19, 2009)

Common Pleas of Chester County[3] and the Superior Court of Pennsylvania affirmed the conviction.[4]

Winslow now seeks damages for the defendants' alleged violations of his constitutional rights and state law. Liberally construed, his Amended Complaint raises seven claims: (1) common law battery, (2) intentional infliction of emotional distress, (3) a Monell claim alleging that the defendants have a policy or custom that caused a violation of his constitutional rights, and violations of the (4) Fourth, (5) Fifth, (6) Eighth, and (7) Fourteenth Amendments to the United States Constitution. Because Winslow's cause of action arises under a federal statute – 42 U.S.C. § 1983 – this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**III. STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a

---

[3] Pennsylvania v. Winslow, No. CP-15-CR-0002374-2006, Docket Entry of 2/06/2008 (Ct. Comm. Pleas, Chester Cty) (Document No. 26, Exhibit B, filed June 16, 2009)

[4] Pennsylvania v. Winslow, No. 830 EDA 2008 (Pa. Sup. Ct. Apr. 7, 2009) (Document No. 18, filed 4/16/2009).

sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950. Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

Plaintiff is proceeding pro se in this case. The Court is mindful of the instruction that it should read the submissions of pro se litigants generously and construe formally imperfect filings in accordance with the pro se litigant's substantive intent. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding pro se complaint to "less stringent standards than formal pleadings drafted by lawyers"). The Supreme Court has ruled post-Twombly that dismissing a case on the basis that "allegations of harm [are] too conclusory to put these matters in issue" would violate the liberal pleading standard for pro se plaintiffs. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## IV. DISCUSSION

### A. Defendants' Legal Defenses: Heck v. Humphrey and Qualified Immunity

The defendants present two legal defenses to Winslow's constitutional claims. The first is that Winslow's claims are precluded by his guilty plea. The second is that the defendants are entitled to qualified immunity.

1. Heck v. Humphrey

Under Heck v. Humphrey, a plaintiff may not recover damages in an action under 42 U.S.C. § 1983 for harms "caused by actions whose unlawfulness would render a conviction or sentence invalid." 512 U.S. 477, 486-87 (1994). Accordingly, this Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his sentence or conviction; if it would, the complaint must be dismissed. . . ." Id. at 487.

Winslow's guilty plea raises the Heck bar. See Justice v. Town of Cicero 577 F.3d 768, 773 (7th Cir. 2009) (citing Zhai v. Cedar Grove Municipality, 183 F. App'x 253, 255 (3d Cir. 2006)). The question presented is whether success on Winslow's constitutional claims would necessarily imply the invalidity of his convictions for driving under the influence and disorderly conduct. Winslow's claim that Malvern and Willistown have a custom or policy of "unlawfully and maliciously arresting, imprisoning, or prosecuting a citizen who was acting in accordance with his cinstitutional [sic] and statutory rights, privileges and immunities," is barred by Heck. (Am. Compl. ¶ 36(b)). Success on this malicious prosecution claim would require Winslow to establish that the criminal proceeding ended in his favor. See Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2002). This would necessarily imply the invalidity of his conviction and is expressly barred by Heck. Heck, 512 U.S. at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution."); see also Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). The Court accordingly grants defendants' motions to dismiss the claim in paragraph 36(b) of Winslow's Amended Complaint.

A number of Winslow's constitutional claims are based on the manner in which he was

arrested. Specifically, his Fourth, Eighth and Fourteenth Amendment claims allege that Douglas made an unlawful arrest outside of his jurisdiction, used unreasonable force, and performed an unreasonable warrantless search of the home at 12 Callery Way. The Fifth Amendment claim is based on Douglas's alleged failure to give Winslow a Miranda warning. Criminal liability and the manner in which someone is arrested are two separate issues – a person can contest the constitutionality of his arrest without necessarily calling into question his underlying guilt. See e.g., Montgomery v. DeSimone, 159 F.3d 120, 126 n. 5 (3d. Cir. 1998) (explaining that "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest."). Because none of the above constitutional claims attack any of the elements of the crimes for which Winslow was convicted, they are not barred by Heck.

### 2. Qualified Immunity

The Court next addresses the government's second defense – qualified immunity. Under that defense government officials such as the defendants in this case are immune from suits for civil damages under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Determining whether the defendants are entitled to qualified immunity requires two inquiries, which can be taken in any order. Id. The first is "whether the facts that a plaintiff has alleged . . . or shown make out a violation of a constitutional right;" the second is "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Id. at 815-16. Qualified immunity is immunity from suit, not just liability. Accordingly, "the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." Thomas A.W.T. v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (quotations omitted). See also Iqbal, 129 S.

Ct. at 1953 (emphasizing that the purpose of qualified immunity is to avoid burdening government officials with the distractions of litigation). The burden of pleading qualified immunity is on the defendants, Thomas A.W.T. 463 F.3d at 293, who seek to have all of Winslow's claims dismissed on this basis. The Court addresses each of Winslow's remaining claims in turn, through the bi-focal lenses of qualified immunity and the Iqbal standard.

### B. Winslow's Fourth Amendment Claims

Winslow's Amended Complaint raises three possible Fourth Amendment violations. The first is that his underlying arrest was unlawful because the arresting officer was outside of his jurisdiction. The second is that Douglas's use of force in the arrest was unreasonable (Am. Compl. ¶¶ 31, 41-42). Winslow's final Fourth Amendment claim is that Douglas's warrantless search of the home at 12 Callery Way was unconstitutional. (Am. Compl. ¶¶ 19 - 27, 41 - 42).

Winslow's first alleged Fourth Amendment violation is that Douglas made the arrest outside of his jurisdiction. This alleged violation implicates provisions of the Pennsylvania Code limiting the jurisdiction of municipal police, 42 Pa. C.S.A. §§ 8951 et seq. Even assuming, *arguendo*, that Winslow's allegation is correct, a violation of Pennsylvania law is not a violation of the Fourth Amendment. As explained by the Supreme Court in Virginia v. Moore, "while states are free to regulate [warrantless] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." 128 S.Ct. 1598, 1607 (2008). The touchstone of Fourth Amendment analysis is reasonableness, Id. at 1606, and arrests based on probable cause are presumptively reasonable. Id. at 1607. Because Winslow pleaded guilty he cannot argue that Douglas lacked probable cause, see Ross v. Donkocik, 60 F. App'x 409, 410 n. 1 (3d Cir. 2003) (citing Heck, 512 U.S. at 486-87 to support conclusion that guilty plea negates § 1983 plaintiff's argument that arresting officers did not have probable cause). Accordingly, the Court assumes that the arrest was

reasonable and concludes that this claim is precluded by Moore and Heck. The defendants' motions regarding this claim are granted.

Winslow also alleges that Douglas handcuffed him tightly, causing his arm to become discolored and painful – a violation of the Fourth Amendment's protection against unreasonable seizure.[5] Whether the force used in making an arrest is unreasonable depends on the totality of the circumstances as viewed from the perspective of a reasonable officer at the scene of the crime. Graham v. Connor, 490 U.S. 386, 397 (1989). Tight handcuffing can constitute unreasonable force, see e.g. Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004), but this determination demands scrutiny of all of the facts surrounding the arrest. The Court thus denies Malvern's motion as to this claim, as asserted against Douglas, but grants the motion as it relates to the other defendants because Winslow does not allege in the Amended Complaint that they used unreasonable force. Willistown's motion to dismiss on this issue is granted in its entirety because there are no allegations that Jones, Narcise or the Township used unreasonable force.

Finally, Winslow claims that Douglas's warrantless search of the home at 12 Callery Way violated the Fourteenth Amendment because he had a reasonable expectation of privacy. Defendants argue that the Court should dismiss this claim because Winslow lacks standing or, alternatively, because Winslow consented to the search. The Court rejects these arguments. First, an overnight guest – which Winslow claims to be – may be entitled to a reasonable expectation of privacy. See Minnesota v. Olson, 495 U.S. 91 (1990). Thus, the unreasonable search claim is not dismissed on

---

[5] "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989). Accordingly, the Court dismisses Winslow's free-standing Fourteenth Amendment Due Process claim, (Am. Compl. ¶ 42(d)), against all defendants.

that ground. Second, because Winslow asserts that his consent to any search was involuntary – a fact-specific determination that requires an analysis based on the totality of the circumstances – dismissal on that ground is inappropriate as it relates to Douglas. It is, however, appropriate to dismiss the unreasonable search claim against all of the other defendants because Winslow does not allege that the other defendants authorized or participated in the search.

The Court denies Malvern's motion to dismiss as it applies to Winslow's fact-specific Fourth Amendment claims that Douglas's use of force was unreasonable and his search unconstitutional. The Court grants the defendants' motions to dismiss all other Fourth Amendment claims.

### C. Winslow's Fifth Amendment Claims

Winslow claims that his right to remain silent, subject to the protections described in Miranda v. Arizona, 384 U.S. 436 (1966), was violated either because Douglas did not immediately inform him of his rights or because Douglas would not let Winslow put on his glasses when he was asked to sign a card confirming that the police had informed him of his rights. (Am. Compl. ¶ 28). Because "a plaintiff may not base a § 1983 claim on the mere fact that police questioned [him] in custody without providing Miranda warnings when there is no claim that the plaintiff's answers were used against [him] at trial," the Court dismisses Winslow's Miranda claims against all defendants. Renda v. King, 347 F.3d 550, 552 (3d Cir. 2003).

### D. Winslow's Eighth Amendment Claims

The Eight Amendment applies only to state conduct occurring after a criminal conviction. Bell v. Wolfish, 441 U.S. 520, 536 n. 16 (1979). To the extent that Winslow's Amended Complaint alleges a claim under the Eighth Amendment, (Am. Compl. ¶ 2), it alleges facts occurring prior to his conviction and is dismissed against all defendants.

### F. Winslow's Monell Claims Against Malvern and Willistown

Winslow's Amended Complaint states that Police Chiefs McMahon and Narcise, respectively of the Malvern and Willistown police departments, (1) failed to instruct, supervise, control, or discipline officers in their duties and to refrain from harassing citizens acting according to law, (Am. Compl ¶ 36(a)), (2) failed to train officers to refrain from maliciously arresting, imprisoning, and prosecuting citizens acting according to law (Am. Compl. ¶ 36 (b)), (3) conspired to violate Winslow's rights, privileges and immunities under the Constitution, (Am. Comp. ¶ 36(c)), and otherwise deprived Winslow of his constitutional and statutory rights, privileges and immunities, (Am. Compl. ¶ 36(d)). The Court has already concluded that the claim alleged in paragraph 36(b) of the Amended Complaint is barred by Heck. It will now address the claims asserted paragraphs 36(a), (c), (d).

A plaintiff may establish a § 1983 claim against a municipality by showing (1) the existence of a custom or policy of the municipality and (2) that the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). Failure to train employees is a violation of § 1983 only where the failure amounts to "deliberate indifference to the [constitutional] rights of the person with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). This failure must reflect a deliberate or conscious choice. Id. at 390. In addition, "a § 1983 plaintiff pressing a claim of this kind must identify a failure to provide specific training that has a causal nexus with his or her injury[.]" Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991).

Paragraphs 36 (a), (c) and (d) of Winslow's Amended Complaint fail to identify a specific policy or custom. Instead, those paragraphs simply paraphrase the language of Monell and § 1983, complaining that while "acting under color of law and pursuant to an official policy or custom

Defendants . . . knowingly, recklessly or with gross negligence failed to instruct. . . ." the defendants of their duties to refrain from harassing citizens acting lawfully, (Am. Compl. ¶ 36(a)), refrain from conspiring to violate citizens' constitutional rights, (Am. Compl. ¶ 36 (c)), and to refrain from otherwise depriving the plaintiff of his constitutional rights. (Am. Compl. ¶ 36(d)). These are merely formulaic recitations of the elements of a Monell claim and, under Twombly, are insufficient to withstand a motion to dismiss. Twombly, 550 U.S. at 555 ( "[F]ormulaic recitation of the elements of a cause of action will not do.").

A reading of Winslow's response to the motions to dismiss reveals that the gravamen of the Monell claims in the Amended Complaint is the alleged policies of Willistown and Malvern to (1) encourage police officers to arrest drunk drivers outside of their jurisdiction in violation of state law and (2) refuse to provide police reports. The Court will consider these allegations in the motion papers as further amending the Amended Complaint. Nevertheless, the Amended Complaint still fails to aver a violation of a constitutional right.

There is no constitutional right not to be arrested outside a police officer's jurisdiction. Moreover, as discussed above, a violation of state law does not, by itself, constitute a violation of the Fourth Amendment. See Virginia v. Moore, 128 S.Ct. 1598 (2008). Thus, even if a policy encouraging police officers to arrest drunk drivers outside a police officer's jurisdiction violates state law, it does not state a cause of action under the Fourth Amendment and § 1983.

This Court is aware of no cases establishing a constitutional right to obtain a police report. See Reppert v. Kummerer, No. 05-CV-01403, 2006 WL 2590504, at *3 (E.D. Pa. Sept. 6, 2006); Bush v. City of Philadelphia, No. Civ.A. 98-0994, 1999 WL 554585, at *8 n. 1 (E.D. Pa. 1999) (noting the absence of a single case suggesting a constitutional right to receive an accurate police report); Foley v. Village of Weston, No. 06-C-350-C, 2007 WL 314465, at *3 (W.D. Wisc. Jan. 29,

2007) ("[B]ecause he had no constitutional right to the [police] reports, plaintiff has failed to state a claim against defendant City of Wausau.").

Because Winslow has not sufficiently pled a violation of a constitutional right, he has not sufficiently pled a Monell claim. The Court accordingly dismisses these claims against all defendants.

### G. Winslow's Battery Claim

Winslow alleges two separate batteries. The first is Douglas's tight handcuffing. The second is Douglas's decision to allow hospital personnel to draw Winslow's blood. As to the first, the rule in Pennsylvania is that a police officer making a lawful arrest "may use such force as is necessary under the circumstances to effect an arrest. The reasonableness of the force used in making the arrest determines whether the police officer's actions constitute an assault and battery." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). As reasonableness is a question of fact for a jury to decide, the Court denies defendant Malvern's motion to dismiss Winslow's battery claim against Douglas. However, because Winslow does not allege facts that would constitute a battery by any of the other defendants, the Court grants the other defendants' motions to dismiss that claim.

The Court grants defendants' motions to dismiss Winslow's claim that his blood test constituted a battery. In Pennsylvania, anyone driving a vehicle is deemed to have consented to a blood, breath, or urine test to determine the alcohol content of their blood if a police officer has probable cause to believe that the person is driving under the influence. 75 Pa. C.S.A. § 1547(a)(1). See also Pennsylvania v. Kohl, 615 A.2d 308, 313 (Pa. 1992) (noting that the statute is constitutional if applied to situations in which police officers have probable cause to believe a crime is being committed). Since consent is a defense to battery, see Levenson v. Souser, 557 A.2d 1081, 1088 (Pa. Super. Ct. 1989), Winslow has no claim if Pennsylvania's implied consent applies.

Winslow argues that the law does not apply because there is no implied consent when a police officer acts outside his jurisdiction. He cites the Pennsylvania Supreme Court's decision in McKinley v. Dep't of Transp., Bureau of Driver Licensing, 838 A.2d 700 (Pa. 2003), where the court held that airport police officers could not enforce the implied consent law without an express grant of extraterritorial authority from the legislature. Assuming, as this Court must, that Winslow's allegation that Douglas was outside his jurisdiction is true, McKinley does not apply to this case because the legislature has, in fact, granted Douglas – indeed, all municipal police officers – extraterritorial authority to enforce the laws of Pennsylvania when he has "probable cause to believe that an offense has been committed, and makes a reaosnable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace, or other act which presents an immediate clear and present danger to persons or property." 42 Pa. C.S.A. § 8953(a)(5).

As explained above, Winslow's guilty plea means he cannot argue that Douglas lacked probable cause. See Ross, 60 F. App'x at 410 n. 1. The Court accordingly assumes that Douglas had probable cause and, with it, the authority to make the arrest and invoke the implied consent law. Cf. Stein v. Department of Transportation, Bureau of Driver Licensing, 857 A.2d 719, 726 (Pa. Commw. Ct. 2004) (holding that police officer had authority to enforce implied consent law outside his jurisdiction upon having probable cause to believe that the suspect was driving under the influence). The Court thus grants the defendants' motions as to this battery claim.

**H. Winslow's Claim of Intentional Infliction of Emotional Distress**

A Pennsylvania plaintiff seeking relief on a claim of intentional infliction of emotional distress must show (1) physical injury, Rolla v. West Moreland Health Systems, 651 A.2d 160, 163 (Pa. Super. Ct. 1994), and (2) conduct that is "extreme and outrageous," Johnson v. Capparelli, 625 A.2d 668, 672 (Pa. Super. Ct. 1993). Conduct is "extreme and outrageous" when it goes "beyond

all possible bounds of decency" and can be regarded "as atrocious, and utterly intolerable in a civilized society." Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). Whether the conduct alleged in Winslow's Amended Complaint rises to this level must be determined in the first instance by this Court. Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993). The Court concludes that the alleged conduct does not rise to the level of extreme and outrageous behavior and, accordingly, grants the defendants' motions to dismiss this claim. Cf. Kist v. Fatula, No. 3:2006-67, 2007 WL 2404721, at * 23 (W.D. Pa. Aug. 17, 2007) (concluding that allegations that an arresting officer used excessive force in making an arrest for disorderly conduct did not rise to the level of outrageousness necessary to state an intentional infliction of emotional distress claim).

## V. CONCLUSION

Winslow has failed to state a claim against any of the defendants except Douglas. Although aware of the important interests protected by qualified immunity, the Court will not dismiss Winslow's fact-dependant claims that Douglas violated Winslow's Fourth Amendment rights against unreasonable search and seizure and committed the tort of battery when arresting Winslow.

Winslow has already filed an Amended Complaint. Moreover, the Court allowed further amendment by including allegations made for the first time in Winslow's motion papers. Under those circumstances, the Court will not allow further amendments.

An appropriate Order follows.